**Louis W. WILLIAMSON, Plaintiff,**

**v.**

**OWENS–ILLINOIS, INC., Defendant.**

**No. C 79–298.**

United States District Court,
N.D. Ohio, W.D.

May 8, 1984.

Robert F. Belovich, Parma, Ohio, for plaintiff.

Thomas L. Dalrymple, Toledo, Ohio, for defendant.

## OPINION and ORDER

WALINSKI, District Judge.

This matter is before the Court on defendant, Owens-Illinois, Inc.'s motion for judgment notwithstanding the verdict and in the alternative motion for new trial. Plaintiff filed a brief in opposition thereto and defendant has subsequently submitted a supplemental brief. In addition, a hearing was held on the motion on August 31, 1983.

The plaintiff, Louis W. Williamson, brought this suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, alleging that his employer, Owens-Illinois, Inc., discharged him because of his age.[1] The jury rendered a special verdict in favor of Williamson, awarding him damages of $262,096.00. After careful examination of the evidence in this case, the Court concludes that there was not substantial evidence to support the jury verdict and therefore defendant's motion for judgment notwithstanding the verdict is granted.

The Sixth Circuit Court of Appeals, in *Morelock v. NCR Corp.*, 586 F.2d 1096 (6th Cir.1978), set forth the standard for determining whether judgment n.o.v. should be entered, as follows:

> The issue raised by a motion for a judgment n.o.v. is whether there is sufficient evidence to raise a question of fact for the jury. *O'Neill v. Kiledjian*, 511

---

1. Two additional causes of action were set out in plaintiff's second amended complaint, alleging breach of an oral contract of employment and defamation. These latter causes of action were dismissed during trial at the close of plaintiff's evidence pursuant to Fed.R.Civ.P. 50(a).

F.2d 511, 513 (6th Cir.1975). This determination is one of law to be made by the trial court in the first instance. *Id.* In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. *See Gillham v. Admiral Corp.,* 523 F.2d 102, 109 (6th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976). If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that *reasonable minds could not come to a different conclusion,* then the motion should be granted. *Id.* at 109; *Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir.1973); 9 Wright & Miller, Federal Practice and Procedure § 2524 (1971).

*Id.* at 1104–05 (emphasis added). *See also, Hildebrand v. Board of Trustees of Michigan State University,* 662 F.2d 439, 443 (6th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982).

■ It is well settled a "mere scintilla of evidence" is insufficient to create a jury issue and justify the denial of a motion for judgment n.o.v. *Richter Concrete Corp. v. Hilltop Basic Resources,* 547 F.Supp. 893, 898 (S.D.Ohio, 1981), *aff'd,* 691 F.2d 818 (6th Cir.1982); *Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1371 (5th Cir.1982); *Tackett v. Kidder,* 616 F.2d 1050, 1052–53 (8th Cir.1980).

The ADEA covers persons between the ages of 40 and 70 years of age and makes it unlawful for an employer:

(1) to fail or refuse to hire or to *discharge any individual* or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age;*

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of an employee in order to comply with this chapter.

29 U.S.C. § 623(a) (emphasis added).

■ "The ultimate issue [in an age discrimination suit] is whether age was a factor in a decision of an employer to terminate an ADEA claimant and whether the age of claimant made a difference in determining whether he was to be retained or discharged." *Ackerman v. Diamond Shamrock Co.,* 670 F.2d 66, 70 (6th Cir. 1982). *See Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir.1983); *Laugeson v. Anaconda Co.,* 510 F.2d 307, 312 (6th Cir.1975); *Moon v. Aeronca, Inc.,* 541 F.Supp. 747, 754–55 (S.D.Ohio 1982). Focusing on the issue of whether age was a determining factor in the discharge of an employee, the Sixth Circuit expressly rejected the rigid or mechanical application of the Title VII prima facie formula employed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to ADEA claims.[2] *Toudy v. Ford Motor Co.,* 675 F.2d 842, 844 (6th Cir.1982); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d at 70; *Laugeson v. Anaconda Co.,* 510 F.2d at 312; *Blackwell v. Sun Electric Corp.,* 696 F.2d at 1179. Rather, the Sixth Circuit has adopted the case-by-case approach. *Laugeson v. Anaconda,* 541 F.2d at 312. In *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d at 70, the Court noted:

**2.** "As modified to fit age discrimination cases, the *McDonnell Douglas* test for making out a prima facie case of discrimination requires that a plaintiff demonstrate that (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person." *Blackwell v. Sun Electric Corp.,* 696 F.2d at 1179 n. 4; *Ackerman v. Diamond Shamrock,* 670 F.2d at 69 (citing *Marshall v. Goodyear Tire and Rubber Co.,* 554 F.2d 730, 735 (5th Cir.1977)).

A mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists. *Id.* Therefore, the plaintiff can establish a prima facie case of age discrimination by using the *McDonnell Douglas* criteria. The plaintiff can also establish a prima facie ADEA case using "statistical information, direct evidence of discrimination, and circumstantial evidence other than that which is used in the *McDonnell Douglas* criteria." *Blackwell v. Sun Electric Corp.*, 696 F.2d at 1179 (citing *Stanojev v. Ebasco Services*, 643 F.2d 914, 920–21 (2nd Cir.1981)). Thus, the Court must use a flexible standard in the evaluation of evidence introduced by the plaintiff to determine whether a prima facie case of age discrimination has been established.

■■■ Once the ADEA plaintiff establishes a prima facie case, the burden of going forward with the evidence shifts to the employer. A defendant's burden to rebut the presumption of discrimination created by a prima facie case is satisfied:

> [B]y producing evidence that the plaintiff was rejected or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. *See [Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) ]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff to accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reason for the plaintiff's rejection.

*Texas Dept. of Comm. Unity Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnotes omitted). Moreover, the actual decision maker need not testify as to what was done and why it was done. Rather, "the employer need only produce admissible evidence which would allow the [court] rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1096.

■■■ After the employer has articulated a legitimate reason for the challenged employment decision, the burden of production is once again on the plaintiff, along with the ultimate burden of persuasion which has never shifted. *Id.* at 256, 101 S.Ct. at 1095; *Blackwell v. Sun Electric Corp.*, 696 F.2d at 1180. The plaintiff is given the opportunity to present evidence that the reason offered by the employer is "pretextual" or "not the true reason." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. This may be accomplished "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Because destruction of the original presumption does not destroy the inherent probative force of evidence earlier introduced by the plaintiff in his prima facie case which invoked the presumption, that evidence, as well as evidence elicited by plaintiff in cross-examination and in rebuttal, may be considered in determining whether plaintiff has carried the ultimate burden of persuasion. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 240 (4th Cir.1982). *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

■■■ The effect of carrying this ultimate burden is to require submission of the question of discriminatory motive to the jury. The effect of a failure to carry the burden is to compel dismissal of the claim upon a motion for directed verdict or judgment notwithstanding the verdict. If this ultimate burden of persuading the court that plaintiff was a victim of intentional discrimination is not carried, the defendant's motion should be granted, even though a prima facie case had originally been established. *See Lovelace v. Sherwin-Williams, Co.*, 618 F.2d at 241 n. 12 (citing *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir.1980)).

Cognizant of the above standards of review and burdens of proof, the Court summarizes the evidence presented at trial as follows:

Louis W. Williamson, age 47, was employed by defendant Owens-Illinois as a pilot from March 1966 to May 1978. Prior to joining the flight operations department of Owens-Illinois, Mr. Williamson was employed as a corporate pilot by Amerada Hess, Olin and Brunswick Corporations. During his twelve years as part of the Owens-Illinois flight operations department plaintiff held the titles co-pilot and reserve captain. Corporate "Performance & Development Review" forms and NBAA Pilot Safety Awards received by plaintiff indicate that his pre-flight duties, flight duties, and aircraft handling were satisfactory. (Pl. Trial Ex. 13–18, 46 and 47). The Owens-Illinois performance evaluation forms further demonstrate that plaintiff was considered highly proficient in his knowledge of the aircraft and regulations, as well as his execution of special assignments. (Pl. Trial Ex. 13 and 14). The plaintiff was terminated May 30, 1978. The testimony of William Geiger, plaintiff's supervisor and the manager of aircraft operations, indicates that in the year following plaintiff's termination three new pilots were hired, two younger than plaintiff and one older.

Based upon the foregoing evidence, the Court concludes plaintiff met his burden of establishing a prima facie case of age discrimination. Plaintiff satisfied the strict *McDonnell Douglas* criteria by proving that 1) he was a member of the protected class between the ages of 40 and 70 years of age, 2) he was discharged, 3) he was a satisfactory and qualified corporate pilot, and 4) he was replaced by a younger pilot outside the protected class. Accordingly, the intermediate burden of going forward with evidence shifts to Owens-Illinois.

There is no doubt the defendant carried this intermediate burden of introducing admissible evidence of legitimate non-discriminatory reasons for plaintiff's discharge. *Burdine*, 450 U.S. at 254–55,

101 S.Ct. at 1094. Trial testimony indicates that during late 1977 and early 1978 Owens-Illinois management and the flight department supervisor became increasingly concerned about Mr. Williamson's performance, appearance, and attitude as a corporate pilot. The defendant proffered two separate non-discriminatory reasons · for this concern and the eventual discharge of the plaintiff.

First, evidence was introduced which demonstrated Owens-Illinois management believed plaintiff had or was developing an alcohol abuse problem. Defendant presented various evidence which supports management's conclusion that Mr. Williamson's consumption of alcohol was at an inappropriate level for a corporate pilot. The record indicates William Geiger, plaintiff's supervisor, received numerous reports of the detection of liquor on plaintiff's breath in the morning and the observation of plaintiff's hands shaking. These instances were reported by other personnel, pilots and passengers. Also presented was evidence plaintiff frequently took bottles off the airplanes and sometimes drank while on stand-by status. By late February and early March 1978, management decided some action had to be taken in response to the increase in frequency and seriousness of the reported incidents.

As a result of a series of meetings between plaintiff, Mr. Geiger, plaintiff's supervisor, and various representatives of defendant's personnel, medical, and legal departments it was agreed Mr. Williamson would attend a substance abuse treatment center. Plaintiff did attend St. Mary's Hospital in Minneapolis and he participated in the evaluation and treatment program. In response to a request for background information on the plaintiff made by Mr. Oliver Stocker of St. Mary's Hospital staff, Mr. Geiger wrote to Stocker listing a number of incidents, observed by or reported to Geiger, in which plaintiff had exhibited erratic behavior apparently in connection with alcohol abuse. (Pl. Trial Ex. 23). This letter further demonstrates the employer believed plaintiff had an alcohol

problem. St. Mary's evaluated plaintiff as being in the early stages of alcoholism and suffering from episodic or periodic excessive drinking. (D. Trial Ex. O). Upon return from St. Mary's, plaintiff was returned to active flight status. In May, 1978, however, Mr. Geiger grounded the plaintiff and reported to Owens-Illinois management little change had been effectuated in Williamson's attitude or behavior. Thereafter, the plaintiff was terminated on May 30, 1978.

The second non-discriminatory reason articulated by defendant for plaintiff's discharge was the existence of a personality conflict between plaintiff and his supervisor, Mr. Geiger. Although both Messrs. Williamson and Geiger attempted to deny the existence of any personality conflict, the record is replete with evidence of such conflict. Testimony at trial illustrates minor incidents involving rule violations or differences of opinion remained unresolved, eventually becoming major disputes. Geiger testified he had continuing complaints about the plaintiff's "unacceptable" smoking habits in and around aircraft, sloppiness of uniform, general physical condition and alleged erratic pilot performance. In response, Williamson displayed a highly defensive, perhaps belligerent, attitude toward his supervisor's criticism and instructions. This attitude is best demonstrated by plaintiff's retention of a lawyer, who accompanied him to certain meetings with management. There is no doubt the employee-supervisor relationship deteriorated in this case to one adversarial in nature.[3]

Owens-Illinois having carried its intermediate burden to rebut plaintiff's prima facie case, plaintiff must establish that defendant's proffered reasons were a pretext for discrimination. Accordingly, the only issue before the Court is whether there was sufficient evidence produced by plaintiff for a jury to find defendant's proffered reasons were pretextual.

■■■ The Court is satisfied that there was no evidence whatsoever that the defendant's decision to discharge plaintiff was based upon age discrimination. At trial, the plaintiff introduced voluminous indirect evidence attempting to prove the defendant's articulated reasons for discharge were pretextual and "unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The eight day trial was dominated by the factual question of whether plaintiff was an alcoholic. This Court, however, has no opinion as to Mr. Williamson's condition at the time of discharge. "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination." *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979). Therefore, whether plaintiff was in fact an alcoholic has only limited bearing on a determination of age discrimination.[4] It is the perception of the decision maker which is at issue. *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). Moreover, the fact a judge or jury concludes the employer misjudged the plaintiff does not in itself expose defendant to ADEA liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.[5] *Burdine,* 450

3. There was also evidence presented that plaintiff had a hostile and uncooperative attitude with other Owens-Illinois pilots. Certain pilots requested that they not be assigned to fly with Mr. Williamson. This evidence raises questions as to plaintiff's compatability and ability to work with other people in the defendant's flight department.

4. A factual determination as to whether plaintiff was an alcoholic may effect a finding of reasonableness of the employer's proffered reasons for discharge and may, therefore, be probative of whether the reasons are pretextual. The finder

of fact, however, must understand that its focus is on the legitimacy of the employer's motivation, and not on the correctness of its business judgment. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012, n. 6 (1st Cir.1979). "The ADEA 'was not intended as a vehicle for judicial review of business decisions.'" *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982) (quoting *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980)).

5. "The more idiosyncratic or questionable the employer's reason, the easier it will be to expose

U.S. at 259, 101 S.Ct. at 1096; *Loeb v. Textron, Inc.,* 600 F.2d at 1012, n. 6. Accordingly, questions germaine to a determination as to pretext in the instant action are: whether Owens-Illinois management perceived Mr. Williamson as having an alcohol abuse problem which was unacceptable for a corporate pilot and; whether this perception was credible and reasonable.

▮ Upon review of the record, the Court concludes plaintiff failed to produce any evidence which draws into question the credibility of defendant's first articulated reason for discharge, the belief by management that Williamson was an alcoholic. As previously noted, the defendant introduced overwhelming evidence which lead to and supports a determination by management that plaintiff had an alcohol abuse problem. Based upon this record, reasonable minds could not come to different conclusions as to whether management's perception of the plaintiff was credible and reasonable.

Plaintiff also attempted to show the second articulated reason for discharge, the alleged personality conflict, was a mere pretext. Testimony of both plaintiff's and defendant's witnesses, however, clearly demonstrated that a conflict existed between the plaintiff and his supervisor. No substantial evidence was introduced at trial which specifically attacked the credibility or reasonableness of this articulated reason for discharge. There is no doubt, therefore, plaintiff failed to prove by indirect evidence that the articulated personality conflict was a pretext for discrimination.[6]

▮ In addition to the above indirect evidence, the plaintiff argued at trial and in his brief in opposition to the instant motions, that the reasons articulated for plaintiff's discharge were "conflicting and incomprehensible to the jury." (Pl.Opp., at 4). Upon close examination the Court finds this argument is without merit. It is clear Owens-Illinois' decision to discharge Mr. Williamson was not the unilateral decision of plaintiff's immediate supervisor. The record indicates the decision to terminate developed over time, in a series of meetings, and involved Mr. Geiger, plaintiff's supervisor, Mr. Rudowsky, Geiger's supervisor, and Dr. Bates, Corporate Medical Director. Accordingly, the fact Owens-Illinois articulated a number of reasons which entered into the decision to discharge the plaintiff rather than one singular reason for his discharge does not in itself support a finding of pretext.

Plaintiff clearly failed to carry the ultimate burden of persuasion through the introduction of evidence attempting to prove defendant's articulated reasons were unworthy of credence. The plaintiff, however, may succeed in this burden by introducing direct evidence of discrimination and, thereby persuading the trier of fact that "a discriminatory reason more likely motivated the employer." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff, having failed to prove the proffered reasons were a pretext, must prove that age was a "determining factor" in the employer's decision to discharge him.

▮ At trial, plaintiff relied on three pieces of evidence as proof that the employment decision had been motivated by a discriminatory animus. First, plaintiff offered a magazine article quoting Mr. Geiger as saying: "Why should I promote an older pilot when I've got a lot of sharp young guys who want to get ahead?" (Pl. Trial Ex. 42, at 81). When this statement is examined in context, as well as in light of the focus of the entire article, ("The Changing Complexion of the Corporate Flight Department"), it becomes clear no age bias can be inferred. The article depicts the modern corporate flight department as becoming increasingly complex, requiring more skilled management. In this context, the following passage appears:

> This brings up another serious question: Do you elevate the bright young pilot

---

it as a pretext, if indeed it is one." *Loeb v. Textron, Inc.,* 600 F.2d at 1012, n. 6.

**6.** It should be noted further that "[p]ersonality conflicts alone cannot supply a basis for an ADEA claim." *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982).

with obvious management potential or the man with the most seniority? All things being equal, most managers agree that the senior man gets the job. But all things are seldom equal.

"Frankly," says Geiger, "there's a lot of trauma with older pilots. Why should I promote an older pilot when I've got a lot of sharp young guys who want to get ahead? *You owe it to yourself as a manager to get the best people into positions of responsibility.*"

(Pl. Trial Ex. 42, at 81) (emphasis added). Reasonable minds simply could not conclude, based upon a fair construction of the above passage, that Geiger was biased against older pilots. Geiger's quoted language, when fairly read, makes the legitimate, non-discriminatory statement that pilots do not automatically qualify for management positions merely by length of service. I must, therefore, conclude the statement is totally innocuous and no inference of age discrimination may be drawn. Moreover, the statements make no reference to the plaintiff. It is well settled that abstract age comments or generalities are insufficient to show age discrimination. *See, e.g., Smith v. Flax,* 618 F.2d 1062 (4th Cir.1980); *Reilly v. Friedman's Express, Inc.,* 556 F.Supp. 618 (M.D.Pa.1983).

■ The second piece of evidence relied on by plaintiff to prove discriminatory intent was a notation made by Geiger concerning Williamson's appearance. This notation appears in Geiger's notes that were to be discussed in the meeting at which plaintiff was grounded. (Pl. Trial Ex. 105). The referenced note is found under the sub-heading "Personnel Area" and states in its entirety "Appearance (age 47)." (Pl. Trial Ex. 105, at 3). Uncontroverted evidence was presented at trial which indicates that this note referred to Mr. Geiger's concerns about Williamson's appearance, his sloppy dress and overweight condition. Geiger also testified he felt a ma-

ture adult should not have to be told by his supervisor to watch his appearance. Geiger's note, placed in proper context, fails to raise a question of age bias.

The last piece of evidence which allegedly supports a finding of age discrimination is plaintiff's claim he was replaced by a younger pilot. During trial the plaintiff testified he was replaced by Mr. Crumbaugh age 36. This appears highly unlikely in that pilot Crumbaugh commenced work on April 1, 1978, some two months prior to plaintiff's termination.[7] (D. Trial Ex. A). Geiger testified that within the twelve months following Williamson's termination, three new pilots were hired, two younger than plaintiff [Calendine (31) and Grubbs (32)] and one older [Lewis (48)]. Grubbs only worked from September until December of 1978. Both Calendine and Lewis are still employed by Owens-Illinois.

■ Assuming, *arguendo*, that Williamson was replaced by a younger pilot,[8] plaintiff's evidence fails to prove age discrimination or raise a question of fact for the jury. The mere fact of replacement by a younger employee, without more, is not sufficient to establish a prima facie case or create a jury question. *Sahadi v. Reynolds Chemical Co.,* 636 F.2d 1116, 1118 (6th Cir.1980). Plaintiff has the burden of proving that the replacement was an inferior performer when compared to the plaintiff. *Burdine,* 450 U.S. at 259–60, 101 S.Ct. at 1096–97. Clearly, plaintiff did not produce any evidence to prove the replacement's inferiority.

■ The Court further concludes the statistical evidence as a whole fails to give any support to plaintiff's allegation of age discrimination. Uncontradicted evidence shows there were six other pilots, not counting supervisor Geiger, in the approximately twelve person flight department who were plaintiff's age or older at the time of

---

7. The record further indicates that Crumbaugh only worked until September 1978 when he resigned. (D. Trial Ex. A).

8. The Court previously made this assumption, without express acknowledgment, in this Opinion and Order when concluding the plaintiff had established a prima facie case under the strict *McDonnell Douglas* test.

his termination.[9] Indeed, four of these pilots were in their fifties. (D. Trial Ex. D). Moreover, the decision to terminate plaintiff was jointly made by Geiger, age 47, Rudowsky, and Dr. Bates, both in their early sixties. The defendant also produced evidence that several other persons under Geiger's supervision resigned or were terminated during the period 1976 to 1980. Thirteen of the 15 persons who left the company in this period were younger than the plaintiff, and the one older person only worked with the company for three days. (D. Trial Ex. A). Of the five employees in the protected class which left the company during this period, only plaintiff was discharged, each of the other persons resigned.

There was simply no statistical evidence of a pattern of age discrimination or of a youth movement within the flight department. The evidence shows beyond question the continued employment of a number of individuals in their forties and fifties at the time of plaintiff's termination. The record is, therefore, quite inconsistent with a purpose to replace people in those age groups with younger workers. *See e.g., Lovelace v. Sherwin-Williams*, 681 F.2d 230, 243, n. 15 (4th Cir.1982); *Smith v. Flax*, 618 F.2d 1062, 1065–66 (4th Cir.1980).

After careful consideration of the evidence in this case, the Court concludes that the plaintiff failed to meet the ultimate burden of proof concerning the articulated non-discriminatory reasons for discharging Mr. Williamson. There is no substantial evidence or inference to permit a finding that the reasons proffered by Owens-Illinois were a pretext for age discrimination against the plaintiff. Indeed, nothing in the record, other than personal conclusions by plaintiff, suggests Williamson's age was in any way a factor in the discharge decision. Furthermore, plaintiff has produced no substantial evidence, either direct or circumstantial, to favor his position that the discharge occurred due to a discrimination animus. Accordingly, the Court finds no substantial evidence in this case permitting a jury inference that Williamson had been discharged for reasons related to age.

I therefore conclude that the evidence and inferences point so strongly in favor of Owens-Illinois that reasonable minds could not arrive at a contrary verdict. Accordingly, the defendant's motion for judgment notwithstanding the verdict is granted and judgment is entered in favor of the defendant.

This leaves for consideration the alternative motion for a new trial, upon which a ruling should be made conditioned on reversal or vacation of the judgment for defendant notwithstanding the verdict for plaintiff. Fed.R.Civ.P. 50(c)(1); *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940). It is the opinion of the Court that should the order for judgment notwithstanding the verdict herein be set aside on appeal that a new trial should be granted. The analysis of the plaintiff's evidence heretofore made, as well as consideration of evidence produced by the defendant, compels a conclusion that the verdict is contrary to the overwhelming weight of the evidence and that the damage award is excessive.[10] For these reasons the Court, in exercise of its discretion, grants a new trial if its judgment, n.o.v. is vacated.

For the foregoing reasons, it is

**9.** The statistical evidence, as summarized below, illustrates the workforce breakdown by age in the Owens-Illinois Transportation Services Department.

| Year End | 18–29 | 30–39 | 40–49 | 50+ |
|----------|-------|-------|-------|-----|
| 1976 | 1 | 3 | 5 | 3 |
| 1977 | . | 3 | 5 | 3 |
| 1978 | | 5 | 3 | 4 |
| 1979 | | 7 | 3 | 4 |
| 1980 | | 7 | 1 | 6 |

(*See* D. Trial Exs. B–F).

**10.** It appears clear that the jury arrived at the excessive damage award of $262,096 by adding the gross loss (past and future) as illustrated by Pl. Trial Ex. 99 ($317,493), to the present value of the same loss found in Pl. Trial Ex. 98 ($206,698), and then averaging the total (dividing by two) to reach $262,096. This was improper and in excess of the amount calculated to be the maximum present value of his past and future loss by $56,000.

ORDERED that defendant's motion notwithstanding the verdict is granted and judgment is entered in favor of the defendant, and it is

FURTHER ORDERED that defendant's alternative motion for a new trial is conditionally granted.