John W. McNEIL, Plaintiff-Appellee, Cross-Appellant,

v.

ECONOMICS LABORATORY, INC., Defendant-Appellant, Cross-Appellee.

Nos. 85–1332, 85–1398.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 3, 1986.

Decided Aug. 27, 1986.

Donald W. Anderson, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendant-appellant, cross-appellee.

Bernard P. Reese, Jr., Reese Reese & Bagley, Rockford, Ill., for plaintiff-appellee, cross-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and EVANS, District Judge.*

CUDAHY, Circuit Judge.

Plaintiff John McNeil brought an action pursuant to the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.*, against his employer, Economics Laboratory, Inc., for his discharge from employment. The district court, in a bench trial, granted judgment for the plaintiff in the amount of $88,000, plus costs and attorney's fees. The defendant appeals and plaintiff cross appeals. We affirm.

I

In 1949 McNeil began working for Klenzade-New York, a company that specialized in the production and sale of sanitation chemicals and equipment for the dairy, beverage and food industries. In 1962 Economics Laboratory purchased Klenzade-New York. McNeil continued to work for Klenzade as manager of Klenzade's New England Division. In 1966 McNeil was transferred from this position to the position of Eastern Area Sales Manager for the Klenzade Division. In this position he managed a sales staff that sold chemical cleaning compounds to various industries. In 1972 McNeil became the Assistant Vice President and Sales Manager of the Engineering Division. There was some evidence of friction between McNeil and his co-workers, but the district court found that his personnel file contains only favorable performance appraisals. Dist.Ct. Order at 11. Plaintiff underwent treatment at an alcoholism treatment center in 1978, apparently as a result of pressure by his designation.

* Honorable Terence T. Evans, District Judge for the Eastern District of Wisconsin, is sitting by

superiors. After his completion of the rehabilitation program, McNeil was given the position of Assistant Vice President-Original Equipment Manufacturer Sales Manager for the Equipment Engineering Department of the Klenzade Division. In this position he sold cleaning systems to third party distributors of Klenzade equipment.

At the time of plaintiff's discharge he was supervised by James Watson, who reported to Robert Sistowicz, who in turn reported to Henry Snyder. Synder testified that in January 1981 he was instructed by his superior to reduce expenses as part of a corporation-wide expense reduction effort. Snyder claims to have directed Richard Rintelmann, Vice President of Marketing for the Klenzade Division, to make recommendations for the expense reduction. Rintelmann later recommended that eleven positions be eliminated, including plaintiff's. Snyder adopted Rintelmann's recommendation that McNeil be terminated. McNeil was sixty-one at the time of his discharge. McNeil's duties were taken over by Robert Price and Watson.

Although others whose positions were eliminated were offered other positions, plaintiff was not. Defendant argues that, although positions were available in Chemical Sales, plaintiff was not offered one because the friction that plaintiff had previously created made such a position inappropriate for plaintiff. Plaintiff, however, was offered a nonsalaried, commission-based position as a sales representative.

## II

■ Section 623 of the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a violation of the ADEA plaintiff must prove that he was discharged because of his age. *See*

*Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1423–24 (7th Cir.1986); *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). The plaintiff "must prove not that age was the sole factor motivating the employer to discharge him but that age was a 'determining factor,' in the sense that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *La Montagne,* 750 F.2d at 1409. The plaintiff may meet this burden by presenting either direct or circumstantial evidence. *Id.*

■ When the plaintiff offers indirect proof of discrimination we apply the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff must first prove a prima facie case of discrimination by showing: 1) that he or she was in the protected class; 2) that the plaintiff was doing the assigned job well enough to meet the employer's legitimate expectations; 3) that in spite of performance the plaintiff was discharged; and 4) that the employer sought a replacement. *Id.* We have noted, however, that in a reduction-in-force case the last element is irrelevant. *See Stumph v. Thomas & Skinner Inc.,* 770 F.2d 93, 96 (7th Cir.1985); *Matthews v. Allis-Chalmers,* 769 F.2d 1215, 1217 (7th Cir.1985). We have held that a prima facie case is established in a reduction-in-force case by: 1) showing that the plaintiff was within the protected age group; 2) showing that the plaintiff was adversely affected, either by discharge or demotion; 3) showing that the plaintiff was qualified to assume another position at the time of discharge or demotion; and 4) producing circumstantial or direct evidence from which a fact-finder might reasonably conclude that the employer intended to discriminate in making the employment decision in issue.[1] *See*

---

1. Judge Flaum has argued persuasively that this last requirement may impose too heavy a burden upon a plaintiff. *See Matthews,* 769 F.2d at

1219–24 (Flaum, J., concurring). He argued that the plaintiff should be permitted to show instead that he or she was discharged while

*Dorsch,* 728 F.2d at 1424; *Matthews,* 769 F.2d at 1217.

■ Once the plaintiff has established a prima facie case, the burden falls on the defendant to articulate lawful reasons for the discharge. *La Montagne,* 750 F.2d at 1409. If the defendant meets its burden of production, the plaintiff must prove "that the proffered reasons are a pretext, by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.*

Defendant argues that a reduction-in-force analysis should be applied to this case. We will assume, without reaching the issue, that the discharge occurred as part of a reduction in force. The district court held that plaintiff had established a prima facie case under a reduction-in-force analysis:

> When the defendant in an age discrimination case has a reduction in force, a prima facie case of age discrimination may be established if the plaintiff shows that he was within the protected age bracket, that he was discharged, that he was qualified to assume another position at the time, and that there is direct or circumstantial evidence of the defendant's intent to discriminate. There is ample evidence in this case to satisfy all of these elements.

Dist. Ct. Order at 13–14. Defendant does not dispute that the first two elements were established.

■ Defendant, however, argues that it had legitimate business reasons not to of-

fer another position to plaintiff. But the district court held that at the time of McNeil's termination, defendant was advertising for positions in the Klenzade Division's sales force and that plaintiff was qualified to perform the duties of such a position. This finding is not clearly erroneous. Defendant argues that the only sales management positions for which it placed any advertisements were in Chemical Sales. Defendant argues that McNeil was unsuitable for these positions "because of past incidents involving customers and fellow employees." [2] Reply Brief of Defendant at 11. We cannot say, however, that the district court clearly erred in concluding that the conduct to which defendant refers should be accorded little weight because it occurred long before the termination and was not thought to be serious enough to be recorded in his monthly or yearly appraisals. Nor did McNeil's supervisor warn him that his conduct would not be tolerated. The district court could therefore have found defendant's proffered reason to be pretextual.

■ In addition, there was sufficient evidence from which the district court might reasonably have inferred that defendant had intended to discriminate. The district court held that the plaintiff had "presented substantial direct evidence of age discrimination.... [t]he record reveals that Snyder intended to get rid of the inherited sales force of 'old salesmen' and replace them with 'bright young people'." Dist. Ct. Order at 10–11. Various statements made by Snyder support these conclusions.[3]

younger employees either were retained to perform the plaintiff's job or permitted to transfer into some other job for which the plaintiff was qualified. *Id.* at 1224.

2. Although defendant argues at length that the district court erroneously concluded that McNeil was performing his job satisfactorily, *see* Defendant's Brief at 24–27, 33–42, we see no reason to address these findings. Defendant clearly adopts the position that "McNeil was terminated solely because of a reduction in force." Reply Brief of Defendant at 9. Defendant also states: *"John McNeil was not discharged for cause because of his sales or his behavioral/drinking problems. His position was*

eliminated because of a reduction in force caused by a need to reduce expenses." Id. at 10–11 (emphasis in original). Further, defendant does not argue that plaintiff's job performance in the Engineering Division was the reason why he was not offered another position in the Chemical Division. See Defendant's Brief at 35, 41.

3. A monthly progress report (MPR) from Snyder to S. Osborn dated July 11, 1980, contains the following comment:

> We are putting our emphasis at the moment on what I call the nuts and bolts training.... I think it's particularly important that we pro-

Defendant argues that these comments can be given an innocent, even laudable interpretation. It argues that the comments do not reveal an intent to terminate older employees, but rather disclose a plan to provide centralized training that would permit it to realize its affirmative action goals. It may be that the comments are capable of more than one interpretation. Nonetheless, the interpretation made by the district court is not clearly erroneous.

Defendant next argues that these comments are not legal evidence of age discrimination because "abstract age comments or generalities are insufficient to show age discrimination." *Williamson v. Owens-Illinois, Inc.*, 589 F.Supp. 1051, 1059 (N.D.Ohio 1984), *aff'd in part and rev'd in part without opinion*, 782 F.2d 1044 (6th Cir.1985). In *Williamson* the court held that an isolated age-related comment did not show defendant's proffered reason for the discharge to be pretextual because that statement, taken in context, was totally innocuous.[4] *Id.* It was in this context that the *Williamson* court made the statement we have quoted. In the case before us the district court did not find the statements to be innocuous. Further, plaintiff relies upon these statements only to establish his prima facie case (not to show pretext). The plaintiff, in establishing his prima facie case, need only produce evidence from which the court could conclude that the employer intended to discriminate and this evidence may be circumstantial.

Defendant also argues that the comments cannot be relied upon because there is no nexus between the comments and any action taken with respect to McNeil. But we would suppose in the ordinary case that such a connection would have to be inferred. And the district court was entitled to rely upon the comments to support an inference that defendant intended to discriminate. It would be unusual to find

---

vide a steady flow of capable people who can handle the servicing and selling needs of existing accounts so we can eliminate our dependence on over-paid and under-motivated veterans of 10 or 15 or 20 years to get the sort of experience necessary to provide reasonable plant service competence.

App. at 421 ("App." refers to the Joint Appendix). Snyder's MPR dated December 16, 1980, comments:

By being able to provide a comprehensive standardized, centralized high-quality technical training program, we are able to make ourselves independent of our reliance on old-timers without the right motivation or education and can hire bright young people fresh out of college and give them the necessary training in a relatively short space of time. It will also let us get at meeting our affirmative action objectives in a meaningful way.

App. at 425. Snyder's MPR dated February 9, 1981, states:

A major factor for the future will, of course, be the success of the Klenzade Institute. We are well on our way in this area, but as you know, the work is all up front, and the benefits are one-two years out. However, within several years, we should find ourselves substantially independent of our inherited sales force and able to rely on our ability to hire, train and motivate bright, young people.

. . . .

John McNeil was also terminated .... I feel very strongly, as I told you separately, Bart, that when faced with the necessity of terminations, it is certainly not in the company's best interest to terminate effective, hard-working newer employees who get trapped in a reduction in force through no fault of their own, while leaving on the payroll employees who simply are not either performing adequately or doing a job worth doing, but who have just been around a long time.

App. at 429–31. Snyder's MPR dated March 13, 1981, includes the following comment:

[W]e simply can't put people in pure sales jobs such as these without proper training. When we created these positions, we staffed most of the openings with people such as H.J. Johnson, who we thought were old pros. It turned out that most of them were just old, and we really didn't have an internal training program up and operating and able to provide the needed replacements.

App. at 434.

4. Similarly, the other cases cited by defendant do not support its position. In *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980), the court held that the particular statements at issue were only truisms and did not indicate a discriminatory purpose. In *Reilly v. Friedman's Express*, 556 F.Supp. 618, 624–25 (M.D.Penn.1983), the court held that an isolated abstract comment did not establish pretext. In *Abraham v. Field Enterprises*, 511 F.Supp. 91, 94 (N.D.Ill.1980), the court dismissed the claims for lack of subject matter jurisdiction, without ever mentioning any allegedly discriminatory statements.

direct evidence of intent of this kind and certainly this is not required. Snyder's comments are reasonably read to reveal that he intended to get rid of old salesmen.[5] Snyder authorized McNeil's discharge. Further, this is not a case in which plaintiff presents one isolated comment. Rather, there are a series of comments that, read together, support the necessary inference and the resulting finding is not clearly erroneous.

## III

[■] Plaintiff appeals the district court's finding that the violation was not "willful" and thus liquidated damages were not appropriate under the statute. 29 U.S.C. § 626(b). We have held that willfulness is established "only if there is some showing as to the defendant's knowledge of the illegality of his actions." *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 155 (7th Cir.1981) (footnote omitted); *see Orzel v. City of Wauwatosa Fire Department*, 697 F.2d 743, 757–58 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). Plaintiff must show that defendant's actions "were knowing and voluntary and that he knew or reasonably should have known that those actions violated the ADEA."[6] *Syvock*, 665

F.2d at 156 (footnote omitted); *Orzel*, 697 F.2d at 758. It is not enough, however, for the employer to simply know of the potential applicability of the ADEA. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985). The Supreme Court noted that it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability because employers are required to post ADEA notices. *Id.*

[■] Plaintiff believes that defendant's violation was willful because there was substantial evidence of discriminatory intent and Snyder admitted that he was aware that the termination of an employee on the basis of age would violate the ADEA.[7] The district court, however, felt that there was "insufficient evidence on the question of whether the defendant knew or should have known that its actions violated the ADEA." Dist. Ct. Order at 15. We may reverse the district court only if its finding is clearly erroneous. *See Orzel*, 697 F.2d at 759. And the finding in question is not clearly erroneous, especially in light of *Thurston*.[8]

## IV

Plaintiff appeals the district court's award of $88,000 in damages, which repre-

---

**5.** Defendant's argument that the comments cannot be relied upon because they were directed only toward the chemical sales force, while McNeil worked in the Equipment Engineering Department, is unpersuasive.

**6.** The Supreme Court recently held that it was reasonable to use a standard under which a "willful" violation would be found if the employer knew, or showed reckless disregard for the question whether, its conduct was prohibited by the ADEA. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985).

**7.** Snyder gave the following testimony:
Q. And you're familiar with the fact there is a federal law on age discrimination, are you not?
A. Yes. As I testified before, I'm familiar, in general, with the fact that there is a federal law on age discrimination.
. . . .
Q. You would be familiar with the fact that the termination of an employee on the basis

of age would be a discrimination [sic] of the act, are you not?
A. Yes.
Tr. at 76–77.

**8.** In *Syvock* we considered, among other things, that the defendant had attempted to show that Syvock was laid off and not rehired in part because of his poor production capabilities. Although the jury was not persuaded by this explanation, "defendant's showing was not so weak as to allow no room for any conceivable explanation for its actions except age discrimination." *Syvock*, 665 F.2d at 157. We held that there had not been a willful violation under 29 U.S.C. § 626(b). Similarly, in the case before us defendant has presented some evidence that the plaintiff was not offered another position because of friction between him and the department in which jobs were available. Although we would hesitate to say that such evidence is always sufficient to show that a violation is not willful, we think that it affords some support to the district court's finding.

sents his net loss for the period between his discharge and the judgment below. Plaintiff argues that the district court should have awarded him front pay up to age seventy.[9] Because plaintiff was sixty-five years old at trial, the issue is whether he should be compensated for the additional five years between judgment in this case and the age of seventy.

The ADEA authorizes the courts to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U.S.C. § 626(b). This circuit has not yet decided whether this grant of authority permits the district court to award front pay. All of the circuits that have decided the issue, however, have held that front pay is an available remedy in appropriate cases brought under the ADEA. *See Wildman v. Lerner Stores*, 771 F.2d 605, 616 (1st Cir.1985); *Maxfield v. Sinclair International*, 766 F.2d 788, 795–96 (3d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *EEOC v. Prudential Federal Savings & Loan Assoc.*, 763 F.2d 1166, 1172–73 (10th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1448–49 (11th Cir.), *cert. denied,* — U.S. —, 106 S. Ct. 525, 88 L.Ed.2d 457 (1985); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984); *Davis v. Combustion Engineering*, 742 F.2d 916, 922–23 (6th Cir.1984); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1100 (8th Cir.1982); *Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1319 (9th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). We agree that front pay may be an available remedy in appropriate cases.

■ Section 626(b) grants broad remedial powers that enable the courts to fashion whatever remedy is required to make the plaintiff whole. *See Wildman,* 771 F.2d at 616; *Whittlesey,* 742 F.2d at 727. A plaintiff is made whole when he or she is returned to the position that such a victim would have occupied had the discrimination not occurred. *See Maxfield,* 766 F.2d at 796; *EEOC,* 763 F.2d at 1173. Although reinstatement is usually the preferred remedy, reinstatement is not always appropriate. *See Wildman,* 771 F.2d at 616; *Maxfield,* 766 F.2d at 796; *EEOC,* 763 F.2d at 1172–73; *Goldstein,* 758 F.2d at 1448; *Whittlesey,* 742 F.2d at 728. For example, there may be no position available or the employer-employee relationship may be pervaded by hostility. *See Whittlesey,* 742 F.2d at 728; *EEOC,* 763 F.2d at 1172. When reinstatement is infeasible or inappropriate, front pay may be appropriate to make the plaintiff whole. In determining whether to award front pay, the court should consider all of the circumstances of the case. *Wildman,* 771 F.2d at 616; *Davis,* 742 F.2d at 923. Front pay may be indicated especially when the plaintiff has no reasonable prospect of obtaining comparable employment or when the time period for which front pay is to be awarded is relatively short. *See Whittlesey,* 742 F.2d at 729; *Davis,* 742 F.2d at 923 (failure to award front pay to 63–year-old plaintiff may be abuse of discretion). On the other hand, front pay may be less appropriate when liquidated damages are awarded. *See Wildman,* 771 F.2d at 614; *Cancellier,* 672 F.2d at 1319. Of course the duty to mitigate damages may limit the amount of front pay available. *See Maxfield,* 766 F.2d at 796; *EEOC,* 763 at 1173; *Whittlesey,* 742 F.2d at 728–29.

■ Although an unreasonable refusal of an offer to reinstate will preclude recovery of front pay, *see O'Donnell v. Georgia Osteopathic Hospital*, 748 F.2d 1543, 1550 (11th Cir.1984), a plaintiff need not request reinstatement as a prerequisite to recovering front pay when reinstatement would be inappropriate. *See EEOC,* 763 F.2d at 1173 n. 2; *see also Maxfield,* 766 F.2d at 796–97 (complaint that contains request for

---

**9.** At age seventy compulsory retirement could be imposed without violating the ADEA. *See* 29 U.S.C. § 631.

future damages is sufficient to preserve issue).

The decision whether or not to award front pay is, of course, within the discretion of the district court. *See Wildman,* 771 F.2d at 616; *Goldstein,* 758 F.2d at 1448; *Davis,* 742 F.2d at 923. We need only review the decision of the district court for an abuse of discretion. Here the district court stated: "The court rejects the plaintiff's argument that he would have received the promotion described, and further rejects the plaintiff's position that he is entitled to be compensated for employment to age 70. There is simply insufficient evidence to support either of those propositions." Dist. Ct. Order at 16. This determination was not an abuse of the district court's discretion.[10]

We therefore affirm the judgment of the district court.

AFFIRMED.

---

**10.** The author of this opinion believes that the district court's terse statement did not set forth sufficient reasons to allow us to evaluate its exercise of discretion. Although the author would therefore remand for further consideration of the front pay issue, his two colleagues believe that the district court's statement was adequate.