**Eugene WZOREK, Plaintiff,**

v.

**CITY OF CHICAGO, an Illinois municipal corporation, Defendant.**

**No. 84 C 9978.**

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1989.

John L. Gubbins, John L. Gubbins & Associates, P.C., and Linda Friedman, Chicago, Ill., for plaintiff.

A. Charles Ex, Corp. Counsel, City of Chicago, Chicago, Ill., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BRIAN BARNETT DUFF, District Judge.

This action came before this court for hearing on the issue of reinstatement and additional relief for petitioner Eugene Wzorek on August 16, 1989. The court has heard the evidence and has considered the testimony, exhibits, stipulations, memoranda of law and arguments of counsel. The court also has noted its prior findings of fact in this case. See *Wzorek v. City of Chicago,* 708 F.Supp. 954, 955–59 (N.D.Ill. 1989). Now fully advised in the premises,

the hearing having been concluded, the court finds these facts:

1. The court issued its previous award to Wzorek on March 21, 1989. Between the date of that order and the date of the hearing, had Wzorek been working, he would have earned $14,500.00 as a Motor Truck Driver for the City of Chicago. The amount of interest on this amount would be $362.50.

2. In the opinion of the psychiatrist whom the court has appointed for this case, Dr. Jan Fawcett, M.D., Wzorek suffers from an incompletely resolved depression, which may have psychotic features. Wzorek also suffers from severe agoraphobia. His illnesses are such that they totally inhibit his ability to function socially in the workplace. He also is deeply suspicious of the reception he would receive from his fellow employees were this court to reinstate him to his former position with the City. Wzorek, however, still desires reinstatement.

3. Wzorek has visited his personal psychiatrist eight or nine times since November 1988. He takes anti-depressant medications which cause slow reactions, sedation, dizziness, and fainting. He occasionally has not obtained his prescriptions for lack of money.

4. Wzorek's present condition is such that he needs more intensive treatment than what he receives presently to restore him to his former capacity to work and enjoy life. Such treatment could last from one to two years, and cost from $50,000 to $150,000. Unless Wzorek begins this treatment soon, there is an increased risk that Wzorek's disabilities will become fixed and incurable. Publicly supported programs could provide elements of this treatment, but none provide the full range of care that Wzorek requires. Wzorek has not sought out any publicly financed programs.

5. Wzorek's future wages for a one-year prospective period have a present value of $33,518.17.

## CONCLUSIONS OF LAW

The court relies in great part on its prior conclusions in *Wzorek*, 708 F.Supp. at 959–61. As a preliminary matter, this court must amend its previous order as to the amount of back pay and prejudgment interest. The Court of Appeals has instructed this court that its previous order was not final, and thus the back pay "clock" has continued to elapse, making what was front pay then back pay now. Accordingly, the court increases the amount of its award of back pay by $14,500, and its award of prejudgment interest by $362.50.

The main issue for the present hearing was whether the court should reinstate Wzorek to his former position as a Motor Truck Driver for the City of Chicago. In making this decision, the court must consider all of the facts, but foremost among these is whether Wzorek is presently qualified for the position which he seeks. See *id.* at 960.

Based on the testimony presented at the hearing, this court concludes that Wzorek is not presently qualified as a Motor Truck Driver for the City of Chicago. He is severely depressed. His medications render him unfit for driving a truck as part of his regular work. He also is suspicious of the City and its employees, which prevents him from working for the City at this time. The court will thus not reinstate Wzorek to his former position.

In lieu of reinstatement, Wzorek asks this court to award him front pay. In cases brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (1982), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (1982), the court may award front pay when reinstatement is inappropriate. See *Reeder–Baker v. Lincoln Nat. Corp.*, 649 F.Supp. 647, 664 (N.D.Ind.1986), aff'd 834 F.2d 1373 (7th Cir.1987) (Title VII); *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118–19 (7th Cir.1986) (ADEA). The aim of front pay under those statutes is to assist the aggrieved individual as he or she prepares for another job. See *Reeder–Baker*, 649 F.Supp. at 664; *Fadhl v. City and County of San Francisco*, 741 F.2d 1163, 1167 (9th Cir.1984).

Title VII and ADEA treatments of front pay are not binding upon this case. Each statute is a legislative response to a specific problem. Each provides remedies that are labelled "equitable," but at bottom these remedies are legal, as they flow from Congress's powers. This case by contrast is equitable, as it is a civil contempt proceeding under the *Shakman* decree. See *Wzorek*, 708 F.Supp. at 959. Nevertheless, Title VII and ADEA cases are instructive, as they indicate the interests which the court should consider in fashioning remedies for a person who has lost his or her job.

■ This court thus should balance Wzorek's interest in being compensated as he would have been had he remained an employee of the City with the interest of the citizens of the City in encouraging Wzorek to find alternative employment. The record of this case reveals that Wzorek might not achieve this latter goal; nevertheless, the court must fashion a remedy designed to move him toward it.

As found above Wzorek must obtain more intensive psychiatric treatment if he is to return to the work force. This could last one to two years. Based on the evidence presented, the court believes that Wzorek's desire to obtain treatment and return to work will hasten Wzorek's recovery. The court thus will award front pay to Wzorek for one year, which has a present value of $33,518.17. If his treatment ends up taking longer than one year, he can petition this court for further relief.

■ This leaves the court with one last question: who should pay for Wzorek's treatment? The court had hoped when it awarded Wzorek back pay, pre-judgment interest, and medical and prescription expenses that Wzorek would have the resources to get the care he desperately needs. Had he begun treatment sooner, his condition might have been corrected more easily, and with less expense. The court did not anticipate that Wzorek would be caught in the throes of an argument over when equitable remedies are final—as if equity in a case such as this one is ever once and for all.

Wzorek and the City share responsibility for Wzorek's future care. As noted in this court's previous ruling, the City's willful violation of the *Shakman* decree entitles Wzorek to recover damages resulting from that violation. See *Wzorek*, 708 F.Supp. at 960. By this point, however, it is not clear to what degree Wzorek's present condition is the result of the City's original violation. The violation has contributed to his condition, but now inadequate care looms as a significant cause. The reason for this inadequate care is lack of resources, but that only begs the question: why does Wzorek lack resources? In part, because the City fired him. See *id.* at 959. In part, because Wzorek has not obtained money on account of any ruling of the courts. Another reason could be that Wzorek has not sought public assistance, although his eligibility for that assistance is a matter of speculation. Even if he were eligible, there is no evidence that these programs would provide him with the care that he requires.

The parties have separate proposals. Wzorek asks for $150,000, the higher limit of what his care would cost. The City argues that if it should pay anything toward Wzorek's future care, it should be an amount equal to Wzorek's premiums for substitute insurance coverage—an amount which is zero, as Wzorek has not purchased alternative insurance. Neither party attacks the method that the other uses for preparing its proposal, but it is apparent that each has its flaws. It is not clear, for example, whether Dr. Fawcett's estimated cost of care was a present value, which would be lower than $150,000. The parties also did not propose a package of, for example, public and private care, coordinated either by Dr. Fawcett or a special master, which could achieve the same result for less. The City for its part avoids confronting the reasons for Wzorek's failure to purchase substitute insurance. Wzorek has no money to buy insurance, see *id.*, and the City never has proven that Wzorek is even insurable. Its proposal is a non-proposal.

The court has to work with the tools which the parties have provided, crude as

they may be. Accordingly, this court orders the City to provide for Wzorek's psychiatric treatment for the next two years up to the amount of $150,000. This is not an award of damages; rather, it is an equitable means of providing for Wzorek's psychiatric care. If Wzorek chooses not to avail himself of this coverage, the City will end up paying nothing.

For the reasons stated in this opinion, the court increases the award of back pay entered March 21, 1989 by $14,500.00 and its award of prejudgment interest by $362.50. The court further awards front pay in the amount of $33,518.17. The court orders the City to provide for Wzorek's psychiatric treatment for the next two years, beginning from the date of this order, up to the amount of $150,000.00.