George F. HYBERT, Plaintiff–Appellee,

v.

The HEARST CORPORATION,
Defendant–Appellant.

No. 89–1576.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1989.

Decided April 20, 1990.

As Corrected May 9, 1990.

Rehearing and Rehearing En Banc
Denied May 23, 1990.

Wilfred F. Rice, Jr., Chicago, Ill., for plaintiff-appellee.

Jeffrey Ross, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Jeffrey Bernbach, New York City, for defendant-appellant.

Before BAUER, Chief Judge, WOOD, Jr. and COFFEY, Circuit Judges.

BAUER, Chief Judge.

Plaintiff George Hybert brought an action against the Hearst Corporation, his former employer of thirteen years, for wrongful discharge in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Following a trial, the jury returned a special verdict in favor of Hybert and awarded him a total of $170,000 in damages. Hybert also received additional equitable relief from the court in the form of front pay. For the reasons stated below, we affirm the jury's verdict and damages award, but remand for a recalculation of the amount of front pay to which Hybert is entitled.

## I.

Hybert began working in Hearst's Chicago office in 1972 selling advertising space in *Good Housekeeping Magazine.* He served continuously in that capacity until his discharge in February, 1985. Throughout his years with Hearst, Hybert received steady increases in his base salary and experienced similar increases in his sales-based commissions, so that, by 1984, his total yearly income from Hearst was over $50,000. In mid–1984, just over nine months before his termination, Hybert received a $2,000/year increase in his base salary. Prior to late 1984, all evaluations of Hybert reflected that he was performing his job adequately. In fact, on several occasions Hybert received praise from his publisher, Ray Peterson, and his immediate supervisor, Chicago sales manager Des Dardenne, for his handling of particular accounts.

Hybert's difficulties at Hearst appear to coincide with the arrival, in July, 1984, of new publisher Lou Porterfield. Prior to Porterfield's arrival at the New York headquarters of *Good Housekeeping,* Hybert had not received any memoranda or evaluations critical of his job performance. Shortly thereafter, however, Hybert was informed by his supervisor Dardenne of several "complaints" regarding his handling of certain accounts.[1] On October 18, 1984, Hybert received his first formal notice of such complaints. On that date, Dardenne sent Hybert a memorandum that listed three specific complaints that had apparently resulted in Hybert being removed from the subject accounts. On the first of these accounts, Hybert was accused of improperly making direct contact with senior executives of the target companies instead of their advertising agency; on another, of similarly making direct contact with product managers instead of advertising personnel; and on the third, of "negative selling" (i.e. making disparaging comments about other magazines).[2] Hybert

---

[1] All of the facts surrounding these "complaints" —their content, legitimacy and severity; when, how, and to whom they were voiced; and etc.— were the subject of sharply differing testimony at trial. It is not our task here to sort out the truth. It was the jury's task, after viewing the witnesses and considering their credibility, to do so. We examine and recount here the evidence upon which the jury could have relied, viewing it, and all reasonable inferences that can be drawn from it, in the light most favorable to the prevailing party. *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1154 (7th Cir.1989) (citing *Mathewson v. National Automatic Tool Co.,* 807 F.2d 87, 90 (7th Cir.1986); and *Christie*

*v. Foremost Ins. Co.,* 785 F.2d 584, 585–86 (7th Cir.1986)).

[2] The October 18th memo also made general reference to other complaints and "internal incidents." The memo verified Dardenne's testimony that he did not know about at least one of these other complaints until Porterfield, the new publisher, informed him of it and instructed him to investigate. (Interestingly, this was one of the accounts on which, according to Hybert's testimony, Hybert had previously received praise from Dardenne and from former publisher Peterson.) On October 26, Dardenne filed another memo reporting the results of his "in-

responded to these allegations with explanatory memoranda and letters to both Dardenne and Porterfield.

Hybert's employment situation deteriorated rapidly in late 1984. On December 19, after an apparently confrontational Christmas party in New York, Porterfield sent Hybert a letter criticizing his "attitude and approach toward business." Nine days later, Porterfield followed up with another letter "to add some clarification," in which he warned Hybert that any further complaints would "indeed be cause for your termination." Such a further complaint apparently came a few short weeks later. In January, 1985, Hybert's new manager Ron Saba[3] informed Hybert that another advertiser had voiced a complaint regarding his performance and that he (Saba) had informed Porterfield of the complaint. As threatened in his December correspondence, Porterfield viewed this last complaint as the last straw. He fired Hybert on February 28, 1985, the stated grounds being "inability to meet the requirements of his position." At the time of his discharge, Hybert was 63 years old.

Along with the foregoing, the jury received two additional, important and hotly disputed pieces of evidence. First, over the hearsay objection of Hearst's counsel, Hybert testified that Dardenne told him: "there is a concern with the people in New York that, with a new publisher, which we expect, there are a number of people up in their sixties [who] are going to be replaced, because they [later described as 'the people in New York'] feel that younger people of ours could call on these younger people in

the agency media departments a lot more effectively." Hybert testified that Dardenne made such statements to him four or five times in early– to mid–1984. Second, Hybert's counsel presented evidence that, contemporaneous with Hybert's firing, the three other employees in *Good Housekeeping*'s Chicago office who were near or over sixty years old were forced to retire, transfer, or otherwise relinquish their prime business, their work uniformly taken by much younger men.[4]

The jury returned a special verdict finding that Hybert had been discriminatorily discharged because of his age. The jury awarded Hybert $150,000 in compensatory damages and, because it found that Hearst willfully violated the ADEA, an additional $20,000 in "liquidated damages."[5] Hearst moved for judgment notwithstanding the verdict ("JNOV"), repeating the unsuccessful arguments it made in its motion for directed verdict regarding the state of the evidence and attacking the jury's damages award. In a memorandum opinion and order dated March 8, 1989, Judge Parsons denied this motion.

Hybert, too, filed a post-verdict motion, requesting additional equitable relief. Judge Parsons ruled that Hybert was entitled to such relief and granted him, in lieu of reinstatement, "front pay" in the amount of $189,266, as well as costs and reasonable attorney's fees. Hearst here appeals the finding of liability, the damages award, and Judge Parson's front pay award.

vestigation," in which he concludes: "you'll agree that I should cover this account for the time being."

**3.** Dardenne had by then returned to *Good Housekeeping*'s one-person Atlanta office, from which he had been promoted to the Chicago office four years earlier.

**4.** The jury heard additional evidence in support of Hybert's claim, including Hybert's testimony as to two other statements made to him by Dardenne: "[T]hey [meaning Porterfield and the other 'people in New York'] are out to get you and they are out to get Charlie Seiler [age 61, who testified that he was pressured into

retiring] next," and, in response to a question from Hybert as to whether problems concerning a certain account were going to be used against him by the New York office, "No, they're going to try to get something more important on you if they can."

**5.** 29 U.S.C. § 626(b) provides that, in cases of willful violations of the ADEA, "liquidated damages" can be awarded in accordance with 29 U.S.C. § 216(b). 29 U.S.C. § 216(b) in turn describes "liquidated damages" as an additional amount equal to the employee's compensatory damages. Thus, the jury in this case could have awarded Hybert as much as $150,000 in liquidated damages.

## II.

Hearst's challenges to the district court's conduct of the trial and to the jury verdict are wholly predictable—and wholly meritless. First, Hearst attacks the admission of the most incriminating piece of evidence against it: the statements made by Dardenne to the effect that "the people in New York" (i.e. Porterfield and Co.) were bent on replacing older salesman with younger salesmen. As it is attacking an evidentiary ruling, Hearst must establish that the district court abused its substantial discretion in making these types of rulings. *See Jardien*, 888 F.2d at 1156; *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989). To this end, Hearst argues on appeal that Dardenne's statements were "double hearsay," contending that they were mere repetitions of the statement(s) of others. Even if Dardenne's statements to Hybert are admissible under Fed.R.Evid. 801(d)(2)(D) as admissions by the agent of a party, the argument goes, there is no applicable hearsay exception or definitional exclusion that covers the first link in the chain: the statements from the people in New York to Dardenne. Thus, Hearst concludes, it is entitled to a new trial because the jury was obviously tainted by this heavily damaging piece of "inadmissible double hearsay."

■ We do not dispute Hearst's assertion that Dardenne's statements likely had a great impact on the jury. Hybert's testimony recounting Dardenne's statements was the most direct evidence supporting Hybert's contention that the management of *Good Housekeeping* fired him for age-based reasons. Further, while on the stand, Hybert was permitted (through the objections of Hearst's counsel) to repeat the statement several times, and Hybert's counsel (understandably) dwelled at length on these statements in his argument to the jury. Hearst's error lies in its classification of the statements as hearsay. As much as Hearst would like to read them as such, Dardenne's statements were not "people (or a particular person) in New York *told* me that ...;" but rather "it's a concern of some of the guys in New York that some of our people in their sixties are going to be replaced," and "there is a feeling in New York that, with the arrival of a new publisher, the people we have in their sixties will probably be replaced." Attention to the precise wording of the statements reveals that they were not "second-hand repetitions" by Dardenne of the statements of others. They were direct warnings by Dardenne, himself a member of management, given to Hybert, his subordinate, as to the attitude, intentions and/or policy of the higher-ups in management. Thus, Judge Parsons' ruling that the statements were admissible as admissions by an agent of Hearst was not an abuse of discretion.[6] *Cf. Oxman v. WLS–TV*, 846 F.2d 448, 456–57 (7th Cir.1988); *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 116–17 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

Second, in an attempt to here re-argue the evidence, Hearst asserts that Hybert failed adequately to prove his case. More precisely, Hearst claims that Hybert failed to establish the requisite *prima facie* case of age discrimination, and/or that, even if Hybert did meet his *prima facie* burden, Hearst came forward with a valid, non-discriminatory reason that Hybert did not adequately show to be pretext. Thus, Hearst concludes, the jury's verdict is unsupported and the district court erred in denying its JNOV motion.

---

**6.** Judge Parsons' ruling regarding the admissibility of Hybert's account of Dardenne's statements actually appears in two places. From the bench, in response to the objection by Hearst's counsel, he ruled, "This is a conversation with your man. This is not hearsay." Trial Transcript, Vol I, p. 150. Later, in his Memorandum Opinion and Order denying Hearst's motion for JNOV, Judge Parsons found that "the statements of Des Dardenne were made under circumstances justifying reliability, and in addition were made in the course of his carrying out duties regarding [Hybert's] retention, duties which were assigned to him by management on that occasion." Though Judge Parsons did not explicitly mention Fed.R.Evid. 801(d)(2)(D), it is clear that he found Dardenne's statements admissible under that rule, (and perhaps also under Fed.R.Evid. 803(24), an issue which we need not, and do not, reach).

Hearst devotes much of its argument to how Hybert fared at the various stages in the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Jardien*, 888 F.2d at 1153–54. After a trial on the merits, however, the question of whether Hybert adequately made out the elements of a *prima facie* case fall away, and the operative issue is simply whether, viewing the evidence in its totality, Hybert sufficiently proved that age was a determining factor in Hearst's decision to terminate him. *Jardien*, 888 F.2d at 1154. Moreover, we are particularly careful in employment discrimination cases to avoid supplanting our view of the credibility or weight of the evidence for that of both the jury (in its verdict) and the judge (in not interfering with the verdict):

> [W]e apply a stringent standard in reviewing a jury's verdict. Employment discrimination cases in particular often involve sensitive and difficult issues of fact. Plaintiffs often have great difficulty in gathering information and can present only circumstantial evidence of discriminatory motives. The credibility of witnesses is often crucial. On review of [a district court's denial of] a motion for judgment n.o.v., we draw all reasonable inferences and resolve all conflicts in the evidence in [the prevailing party's] favor.

*Christie v. Foremost Insurance Co.*, 785 F.2d 584, 586 (7th Cir.1986) (quotations and citations omitted). *See also Mathewson v. National Automatic Tool Co.*, 807 F.2d 87, 90 (7th Cir.1986).

Viewing the evidence with these principles and standards in mind, we find it sufficient to support both the jury's verdict and Judge Parson's decision that "[i]t would have been improper to have removed this case from the jury either before or after the verdict." Hybert presented evidence that, at least prior to Porterfield's arrival, he received only positive evaluations from Hearst. He also presented evidence, through his own testimony and the testimony of other former Hearst employees, that it was known that the arrival of Porterfield would spell the end for older employees *because they were older* (Dardenne's warnings), and that, as Judge Parsons stated, Porterfield in fact "proceeded to strip the Chicago office, out of which [Hybert] worked, of its four oldest employees." Of course, Hearst strenuously takes issue with this evidence, and did so before the jury. It presents (and presented) its own explanation of Hybert's discharge, alleging that the true reason was not age-related but performance-related. Hybert counters (and countered) with evidence which casts doubt upon the legitimacy of Hearst's suggested reason, including inconsistencies in the testimony of Hearst's witnesses and an admission by Dardenne that at least part of the reason for his memos listing the alleged complaints was to "create a record against Mr. Hybert." The jury obviously chose to believe Hybert's evidence over Hearst's. We shall not interfere with this choice, nor with Judge Parson's decision to follow the same, prudent course. *Cf. Jardien*, 888 F.2d at 1155; *Christie*, 785 F.2d at 586–87.[7]

### III.

Hearst's challenge to the district court's front pay award contains some merit, however. The ADEA allows trial courts, in

---

**7.** Hearst's challenge to the jury's damages award is similarly meritless. Hearst alleges that Hybert "made only a brief and superficial effort to seek employment" following his discharge from Hearst, and that therefore Judge Parsons erred when he failed to set aside or reduce the damages award for failure to mitigate. It is true that an employment discrimination plaintiff has a duty to "use reasonable diligence in finding other suitable employment," "suitable" meaning "substantially equivalent." *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982). It is also true that the losing defendant bears the burden of proving that the plaintiff failed to mitigate damages, and that we will only overturn a district court's mitigation finding if it is shown to be clearly erroneous. *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 159–60 (7th Cir.1981). Hearst has failed to adequately disprove or discredit the record evidence regarding Hybert's job search. Thus, it has failed to establish clear error in the district court's judgment order.

their discretion, to provide successful age discrimination plaintiffs additional equitable relief, including forced promotion or reinstatement.[8] Several circuits, including this one, have ruled that this ADEA provision also permits district courts to award "front pay," or the present value of the future income that the ADEA plaintiff would have earned if he/she would have remained in the defendant's employ for the rest of his/her working life. *McNeil v. Economics Laboratory, Inc.*, 800 F.2d at 118 (so holding and citing cases).

In *McNeil*, this court set out the basic guidelines for a front pay award determination:

> Although reinstatement is usually the preferred remedy, reinstatement is not always appropriate. For example, there may be no position available or the employer-employee relationship may be pervaded by hostility. When reinstatement is infeasible or inappropriate, front pay may be appropriate to make the plaintiff whole. In determining whether to award front pay, the court should consider all of the circumstances of the case. Front pay may be indicated especially when the plaintiff has no reasonable prospect of obtaining comparable employment or when the time period for which front pay is to be awarded is relatively short. On the other hand, front pay may be less appropriate when liquidated damages are awarded. Of course, the duty to mitigate damages may limit the amount of front pay available. [And finally, a]lthough an unreasonable refusal of an offer to reinstate will preclude recovery of front pay, a plaintiff need not request reinstatement as a prerequisite to recovering front pay when reinstatement would be inappropriate.

800 F.2d at 118 (citations omitted). Subsequent cases have provided further guidance in the awarding and calculating of front pay awards. *See, e.g., Graefenhain*

*v. Pabst Brewing Co.*, 870 F.2d 1198 (7th Cir.1989); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1330–35 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700, *vacated on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223, *on remand*, 860 F.2d 834 (7th Cir. 1988).

In this case, the court quoted the passage from *McNeil* and then reviewed the following factors: Hearst's offer to Hybert of a "different sales position" in the Chicago region, an offer the judge determined to be not "comparable" or "equivalent;" the amount of time that Hybert had been away from his position; the substantial hostility between Hybert and Hearst management; and the "relatively short period of time for which re-employment would be required." From this review, the court concluded that reinstatement would be highly inappropriate and that the "better solution would be an award of front pay." Turning to the amount of front pay to be awarded, the court stated the following:

> Considering the nature of the employment, the plaintiff's apparent good health and his professed willingness to work until age seventy-two, it is reasonable to suggest that an appropriate award would be the present value of five years of the annual income of $51,000 per year (this being the amount the plaintiff was receiving at the time of his discharge) times the number of years remaining in his working life before retirement *as suggested by the plaintiff.*

(emphasis supplied). The court then stated that this amount, discounted to present value, equals $189,266, and awarded that amount. As indicated by the italicized phrase, in coming to this amount the court fully accepted the conclusions and calculations contained in Hybert's submissions, and in fact awarded the full amount re-

---

8. 29 U.S.C. § 626(b) reads, in pertinent part: In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal *or equitable relief as may be appropriate* to effectuate the purposes of this chapter, including without limitation judgments compel-

ling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

quested.[9]

■ As the decision regarding additional relief under the ADEA is within the discretion of the district court, we will disturb it only if it constitutes an abuse of that discretion. *McNeil*, 800 F.2d at 119. Despite this highly deferential standard of review, we find sufficient ambiguity and shortcomings in the district court's front pay award here to merit a remand for re-calculation.[10] First, it appears that no (or inadequate) consideration was given to the fact that Hybert was awarded liquidated damages. As we stated in *McNeil*, 800 F.2d at 118, and recently reaffirmed in *Graefenhain*, 870 F.2d at 1205, liquidated damages are a relevant consideration in determining whether and how much front pay should be awarded. *See also Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985) ("Because future damages are often speculative, the district court, in exercising its discretion, should consider the circumstances of the case, including the availability of liquidated damages."); *Cancellier v. Federated Department Stores, Inc.*, 672 F.2d 1312, 1319 (9th Cir.) (same), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Rengers v. WCLR Radio Station*, 661 F.Supp. 649, 651 (N.D.Ill.1986) ("That plaintiff will receive a substantial liquidated damage award further strengthens the court's judgment that he has already been made whole."), *aff'd*, 825 F.2d 160, 163 (7th Cir. 1987), *vacated on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223, *on remand*, 857 F.2d 363 (7th Cir.1988). Although the liquidated damages awarded here may not be sufficiently "substantial" to merit a denial of front pay, they at least merit explicit consideration in the determination of the amount of front pay to be awarded.

A second, and more troubling, shortcoming is the lack of attention given to the highly speculative nature of the front pay requested by and awarded to Hybert. In language keenly applicable to this case, we stated in *Graefenhain* that the combination of front pay with liquidated damages is less appropriate when the former is "highly speculative due to the lengthy period for which damages are sought and the lack of certainty that plaintiff would have remained employed during such a lengthy period." 870 F.2d at 1205. *See also Rengers*, 661 F.Supp. at 650–51 ("If the court awards front pay for the remainder of the plaintiff's working life, it must presume the plaintiff would have remained in the defendant's employ all during that time. The longer the front pay period, the more speculative the front pay award.").

In this case, Judge Parsons calculated Hybert's front pay under the following assumptions: that Hybert would have continued to work at his present level of activity until age 72 (Hybert was 67 years old when the trial ended, so the court's five-year front pay award would carry him to age 72); that Hearst would have continued to employ Hybert in his last-held position for five more years until he retired at age 72; and that Hearst would have continued to employ Hybert at his last-held salary level for five more years until he retired at age 72. The record provides an inadequate predicate for these assumptions. No record evidence speaks to whether advertising space salesman for magazines like *Good Housekeeping* generally work to age 72, nor whether Hybert in particular could or would have done so (other than Hybert's "apparent good health" and his "professed willingness"). Further, although there

---

**9.** Perhaps to justify such reliance, the court noted that "[t]o these calculations defendant has made no direct reply nor offered any contradictory evidence." Such a failure by Hearst's counsel, however, does not relieve the district court of its duty to make sure that the predicate exists for the substantial front pay award requested here.

**10.** We reject Hearst's challenge to the district court's initial conclusion that reinstatement is

inappropriate in this case. It is clear from his Opinion and Judgment Order that Judge Parsons gave adequate consideration to the factors outlined in *McNeil* in determining that "front pay rather than reinstatement is the more equitable." Our concern is with the court's failure to give adequate consideration to the factors discussed below in its subsequent calculation of the front pay award.

was sufficient evidence to support the jury's conclusion that Hybert's discharge was age-based, the evidence regarding complaints from advertisers, tension with management, and other performance-related problems should not be ignored in making the front pay determination.[11]  *Cf. Rengers*, 661 F.Supp. at 651 (despite jury verdict that age was a determining factor, court nonetheless considered "animosity, distrust, disagreement and conflict" between plaintiff and defendant in denying nine-year front pay award).  Thus, given the evidence currently in the record, it was impermissibly speculative to award Hybert front pay in such a large amount and covering such an extended length of time.

## IV.

For the foregoing reasons, the district court's front pay award is vacated and the issue is remanded for further proceedings in accordance with this opinion.  In all other respects, the judgment of the district court and the jury's verdict and damages award are affirmed.

---

**11.** As we mention above, Judge Parsons did refer to the Hybert–Hearst hostility in his order, but it appears that he only considered this factor in choosing front pay over reinstatement, not in considering the proper extent of front pay.