PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-3038

_____

D. C. Docket No. 94-30361-RV

LAWRENCE T. ZABEN,

Plaintiff,

JAMES O. LEWIS,

Plaintiff-Appellant,

versus

AIR PRODUCTS & CHEMICALS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(December 3, 1997)**

Before BLACK, Circuit Judge, HILL and HENDERSON, Senior Circuit Judges.

PER CURIAM:

James O. Lewis filed this action in the United States District Court for the

Northern District of Florida pursuant to the Age Discrimination in Employment Act,

29 U.S.C. § 621 et seq. ("ADEA"), charging the defendant, Air Products & Chemicals, Inc. ("APC"), with discrimination because of his age when he was discharged in connection with a reduction in force at its Pace, Florida, plant. APC eventually filed a motion for summary judgment, which was granted by the district court. Lewis filed this timely appeal from that final judgment. We affirm the judgment of the district court.

## I. FACTS

Lewis was born in June, 1942, and began working for APC as an electrician at its Pace, Florida, plant in March 1980. He later exercised his plant seniority to transfer to a chemical operator position during another reduction in force ("RIF") in 1986. He transferred back to his electrician job in 1991, where he remained until the end of his tenure with APC . Sometime prior to August of 1993, APC executives at the company's headquarters in Allentown, Pennsylvania, decided to improve the company's profits and competitive position by downsizing the firm's workforce by seven to ten percent. This "Profit Improvement Plan" was communicated to Brian Gebbia and Phillip Bryant, the manager and the human resources director, respectively, of the plant, on or about August 17, 1993. The only instructions apparently given to Gebbia and Bryant were that this was to be a position reduction and seniority was not to be a factor in the selection of employees for termination so that no employees would be permitted to "bump" a less senior employee in order to transfer to another job classification within the plant.

Based on his familiarity with the employees and their annual evaluations but without consulting their personnel files, Bryant began compiling a list of employees

2

for dismissal within the strictures of these guidelines. He determined that all of the electricians in the plant were equally skilled but selected Lewis for termination because he did not have as much seniority as the others in that group, even though at that time he was 51, the oldest electrician employed at the plant.

Lewis and Lawrence T. Zaben,[1] a production foreman who was also released, filed this action under the authority of the ADEA and the Florida Civil Rights Act, West's F.S.A. § 760,[2] alleging that their discharges were the result of unlawful age discrimination. APC eventually filed a motion for summary judgment on all the plaintiffs' claims, giving as its reason for letting Lewis go that he had the least seniority of all the electricians. In his opposition to the motion, Lewis alleged, inter alia, that two first-line supervisors at the plant, Hobart Carter and Tommy Dunning, had told him that the company wanted to get rid of its older employees.

The district court held that these alleged statements were hearsay and did not fall within the hearsay exception for admissions by a party opponent because there was no evidence that Carter or Dunning had any input in the RIF decisions affecting Lewis or Zaben or played any role in Lewis' dismissal. Fed.R.Evid. 801(d)(2)(D). The court noted that these "statements may also present a double hearsay problem because the declarants seemed to be repeating what other, unidentified, declarants

---

[1]At age 55, Zaben was the oldest supervisor in the Pace facility at the time of his termination. According to management, Zaben was selected because, although he had excellent technical abilities, he was deficient in interpersonal and leadership skills.

[2]Age discrimination claims brought under the Florida Civil Rights Act have been considered within the same framework used to decide actions brought pursuant to the ADEA. See Morrow v. Duval County School Board, 514 So.2d 1086 (Fla. 1987).

had told them."[3] After excluding these statements, the district court concluded that Lewis had not offered sufficient admissible evidence to overcome APC's articulated legitimate reason for releasing him. Accordingly, the court entered a Fed.R.Civ.P. 54(b) final judgment against Lewis.[4] Lewis appeals from that judgment.

## II. STANDARD OF REVIEW

We review a district court's order granting summary judgment de novo. Browning v. AT&T Paradyne, 120 F.3d 222 (11th Cir. 1997). Summary judgment is appropriate where there is no genuine issue of material fact to be tried. Fed.R.Civ.P. 56 (c). A fact is material only when the dispute over it has the potential to change the outcome of the lawsuit under the governing law if found favorably to the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 538 (1986). We view the record, and all reasonable inferences therefrom, in the light most favorable to the nonmoving party. Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996). A district court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. Judd v. Rodman, 105 F.3d 1339, 1341 (11th Cir. 1997).

## III. DISCUSSION

*A. Supervisors' Statements.*

---

[3]Order dated June 11, 1996 at 6 n.2.

[4]The court denied APC's motion in Zaben's case because it found that age-biased statements by Jim Maharg, Zaben's supervisor, were made within the scope of his employment and, thus, constituted direct evidence of discrimination in Zaben's case. According to Zaben's deposition testimony, Maharg repeatedly threatened to get rid of him because he was too old to change. See, e.g., Zaben Dep. at 67.

4

As noted above, in opposing APC's motion for summary judgment, Lewis relied in part on statements allegedly made by two lower-level supervisors at the plant, Hobart Carter and Tommy Dunning. According to Lewis' deposition testimony, these individuals told him that "they [meaning higher officials at the company] was [sic] talking about getting rid of the older employees,"[5] and that "they wanted younger employees to train them the way they wanted them."[6] Lewis argued that the statements survived the hearsay prohibition because they were admissions by a party opponent in compliance with Fed.R.Evid. 801(d)(2)(D). The district court determined that there was no evidence these individuals played any role in the decision to terminate Lewis and that the statements, therefore, constituted hearsay.

On appeal, Lewis urges that the statements are admissible as some evidence of age discrimination because they were made in the course of addressing subordinates at daily meetings in the ordinary scope of their duties. APC claims that the district court correctly excluded the statements because they are simply statements of opinion by lower-level supervisors who had no responsibilities for personnel decisions and who were not involved in any way with the employment decisions made in conjunction with the RIF.

Under the Federal Rules of Evidence, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). As a general rule, "h]earsay is not admissible except as provided by these rules ...." Fed.R.Evid. 802.

---

[5]Lewis Dep. at 39.

[6]Lewis Dep. at 40.

Excepted from the definition of hearsay, however, is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," which is deemed an admission by a party opponent. See Fed.R.Evid. 801(d)(2)(D). Thus, statements made by a supervisory official who plays some role in the decision making process are generally admissible. See, e.g., Miles v. M.N.C. Corp., 750 F.2d 867, 873-75 (11th Cir. 1985). Moreover, such statements can constitute direct evidence of discrimination. Under this circuit's precedent, direct evidence of discrimination is competent evidence which, if believed, would prove the existence of a fact at issue without inference or presumption. See Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).

The statements need not constitute direct evidence of discrimination, however, to be admissible. Lewis relies on several decisions which approve the admission of supervisors' statements regarding possible age bias of others within a company. The Seventh Circuit Court of Appeals has held that statements by the plaintiff's supervisor about "the attitude, intentions and/or policy of the higher-ups" in management were properly admitted into evidence. See Hybert v. Hearst Corp., 900 F.2d 1050, 1053 (7th Cir. 1990). Crucial to that decision, however, was the court's conclusion that the statements were a direct warning by the plaintiff's supervisor, himself a member of management, and that they were not simply a repetition of what others in management had told him. Id. Thus, the statements posed no "double hearsay" problem. Id.

6

Similarly, the Third Circuit Court of Appeals has held that an employee may testify about statements made by his supervisor regarding company policy toward older employees. According to that court, "[w]here a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer." Abrams v. Lightolier Inc., 50 F.3d 1204, 1216 (3d Cir. 1995). The court found that there was no double hearsay problem because the supervisor's explanation, if offered in person by the supervisor, would not be subject to a hearsay objection. Id. In each of these cases, the supervisor's statements to their subordinates were found to have been made within the ordinary scope of their duties. Therefore, they constituted an admission by a party opponent which was not excludable as hearsay. In this case, neither Carter nor Dunning was Lewis' supervisor. Further, there has been no showing that Carter or Dunning possessed any authority to speak for APC on personnel matters generally or the RIF in particular.

Moreover, as the district court suggested, Lewis' testimony concerning what Carter and Dunning said to him about what others in the company told them presents a classic "double hearsay" problem. Under the federal rules, "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed.R.Evid. 805; see U.S. v. Pendas-Martinez, 845 F.2d 938, 942-43 (11th Cir. 1988)(both levels of hearsay must be excepted from the hearsay rule). In a factual

situation very similar to that here, the Third Circuit Court of Appeals decided that the plaintiff's testimony that his supervisor told him that "they [presumably meaning unidentified superiors of the supervisor at the company] wanted a younger person" was inadmissible double hearsay because there was no basis for admitting the statement that "they" made. Carden v. Westinghouse Electric Corp., 850 F.2d 996, 1002 (3d Cir. 1988). The Eighth Circuit Court of Appeals reached the same conclusion in Cedeck v. Hamiltonian Federal Savings & Loan Association, 551 F.2d 1136 (8th Cir. 1977).

As stated earlier, Carter's and Dunning's statements to Lewis are hearsay because they were not made within the scope of their authority at the company. If Carter and Dunning had been deposed - or had furnished sworn affidavits - and had testified with respect to age-biased statements made by specifically identified, senior managers at the plant, their statements, like those in Hybert and Abrams, might have been relevant and, therefore, permissible. Lewis did not offer such testimony. Rather, as in Carden and Cedeck , Lewis sought to have the district count consider statements made to him by Carter and Dunning that "they," meaning other unidentified declarants, wanted to get rid of their older workers. Such testimony is hearsay and was properly excluded by the district court.

B. Summary Judgment.

In an unlawful age discrimination case, the plaintiff bears the ultimate burden of proving by a preponderance of the evidence that age was a determining factor in the employer's decision to dismiss him. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1993). In order to survive a motion for summary judgment, the

plaintiff must first establish a prima facie case of age discrimination. This may be accomplished by presenting direct evidence of discriminatory intent, such as age-biased statements made by the decision maker, see Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990); by presenting circumstantial evidence which complies with the test set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by presenting a statistical pattern of discrimination, Earley, 907 F.2d at 1081. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. Clark, 990 F.2d at 1227. If the employer does so, the burden shifts back to the plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Id. at 1228.

Lewis did not present any statistical evidence of discrimination and, with the exclusion of the statements attributed to Carter and Dunning, he offered no direct evidence of discrimination with respect to APC's decision to terminate his employment. Therefore, his only option for establishing a prima facie case was to present circumstantial evidence which satisfied the McDonnell Douglas test. Under that formula, the plaintiff must show that he or she (1) was a member of a protected group, (2) was qualified to do the job, (3) was discharged and (4) was replaced by someone outside the protected group. See Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1558 (11th Cir. 1988). These elements are altered in cases involving RIFs and in those where a position is eliminated entirely. In such cases, the plaintiff must show (1) that he was in a protected age group and was adversely affected by

9

an employment decision, (2) that he was qualified for the position held at the time of discharge and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision. Jameson v. Arrow Co., 75 F.3d at 1532.

The district court concluded that Lewis had failed to offer evidence sufficient to permit a reasonable fact finder to believe that APC intended to discriminate on the basis of age. Assuming, however, that Lewis had established a prima facie case, the court further concluded that he had not presented sufficient probative evidence that APC's asserted reason for terminating him was a pretext for discrimination. On appeal, Lewis challenges the grant of summary judgment to APC because the court failed to view the evidence in the light most favorable to him. According to Lewis, there was sufficient evidence from which a reasonable juror could find that the entire RIF selection process was tainted with age-biased statements of various APC personnel. APC argues that there was insufficient admissible, relevant evidence from those clothed with adequate authority to establish that its proffered reason for terminating Lewis, his lack of seniority, was a pretext for discrimination.

Lewis points to age-biased statements made by Maharg, Zaben's supervisor, and other employees of APC as evidence of APC's discriminatory intent. While Maharg did apparently make recommendations concerning the dismissal of certain employees, they were limited to those under his supervision. According to Maharg, Lewis' termination was never discussed in his presence.[7] There is no evidence that anyone other than Gebbia and Bryant participated in the decision to discharge

---

[7]Maharg Dep. at 89. In contrast, it is undisputed that Maharg had input into the company's decision to discharge Zaben. Id. at 84; Gebbia Dep. at 14.

10

Lewis. The plaintiff also complains that Gebbia improperly focused on an employee's future prospects with the company in making the decisions to dismiss or retain those under his authority. In support of this contention, Lewis points to Gebbia's responses to several questions posed by the plaintiffs' attorney during Gebbia's deposition months after the events at issue. During that deposition, counsel for the plaintiffs was inquiring why Zaben was selected for termination rather than a younger supervisor with less experience. The following exchange took place:

Q: Since you were not looking and simply comparing their past experience with the company, you must have been looking toward the future; correct?
A: As well.
Q: And from your standpoint, Mr. Parker had a – was a better future prospect for the company that Mr. Zaben; true statement?
A: True.
Q: He had a longer term potential for employment there than Mr. Zaben did, didn't he?
A: From performance, yes.
Q: And if you were going to invest money in one or the other of them, it made business sense to you to select Mr. Parker over Mr. Zaben, didn't it?
A: But it was not all on the decision of the future.
    We did look at past – past performance was part of that.
Q: I understand. And if you looked at past experience, clearly, Mr. Zaben had it all over Mr. Parker.
A: Not on social and leadership skills.

(Gebbia Dep. at 35-36). These ambiguous responses clearly do not establish that Gebbia looked only at Parker's "future" with the company in deciding to select Zaben for termination. Moreover, it has no bearing on Lewis' cause of action whatsoever and is insufficient to raise an issue of fact here.

As further evidence of APC's alleged discriminatory practices, Lewis proffered the affidavit of Dale Maxwell, who was formerly a receptionist at APC. She stated that, while a number of older people had come into the plant looking for employment, she could not recall anyone over 50 ever being hired. Noting that there had been no showing that Maxwell had any knowledge about the demographics of job applicants at APC, this court rejected this testimony in an earlier age discrimination

11

case against the company.  See Ward v. Air Products & Chemicals, Inc., No. 96-2940 (11ᵗʰ Cir. Mar. 18, 1997).

Although the company gave differing explanations for the selection of employees to be discharged, saying on the one hand that seniority played no role in the process and that only an employee's performance was considered while, on the other hand, asserting that Lewis was discharged because he had the least seniority, its reasons are not, as the district court observed, necessarily inconsistent. In selecting individuals to be terminated generally, APC relied on  performance criteria.  In the case of the electricians, since Bryant considered the performance of all of the electricians to be about equal, the company selected the electrician with the least seniority, Lewis, for termination.

Finally, Lewis contends that he should have been allowed to transfer to a chemical operator's job as he had done during the 1986 RIF.  He calls attention to the fact that the company hired a number of individuals for chemical operator positions in the spring of 1993 and again in the spring of 1994 and that the average age of those new hires was under 30.  One of the few instructions that Gebbia and Bryant received from the company's headquarters concerning this RIF was that no one would be permitted to use seniority to "bump" another employee.  In fact, as APC points out, no one selected for termination in this RIF was permitted to transfer to another job within the Pace facility.

In summary, the district court correctly concluded that Lewis had failed to present sufficient evidence of pretext to create a jury question as to whether APC intentionally discriminated against him on the basis of his age.  Because of this deficiency, the judgment of the district court is AFFIRMED.